UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ETOPUS TECHNOLOGY, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>HANLI LIU,<br><br>    Defendants. | Case No. 23-cv-06594-HSG  (PHK)<br><br>**ORDER RESOLVING DISCOVERY DISPUTE RE: DEFENDANT'S FIVE FLASH DRIVES AND DOCUMENTATION TO CONFIRM DEFENDANT'S EMPLOYMENT BY ZHEJIANG UNIVERSITY**<br><br>Re: Dkts. No. 41, 42, and 46. |

This is a trade secrets case, in which Plaintiff Etopus Technology, Inc., ("Etopus") alleges generally that Defendant Hanli Liu misappropriated certain trade secrets in the time period surrounding his departure from Etopus (where he previously worked as an engineer). [Dkt. 1]. This case has been referred to the undersigned for discovery. *See* Dkt. 43. Now before the Court is a joint letter brief, filed on May 31, 2024, which raises two disputes concerning Plaintiff's document requests. [Dkt. 41]. In connection with this discovery letter brief, Defendant filed an "Objection" to footnote 6 in the joint letter brief. [Dkt. 42]. The Court ordered the Parties to comply with the undersigned's Standing Discovery Order, including the meet and confer requirements therein, and file a Status Report of the results of such meet and confer without including any additional argument on the discovery dispute. [Dkt. 45]. The Parties filed their Joint Status Report on June 28, 2024, in which they disappointingly reported that they were unable to resolve any of the disputes and (further disappointingly and contrary to the Court's June 5, 2024, Order) repeated arguments made in the joint letter brief. [Dkt. 46].

The Court determines that the disputes raised by the Parties in the instant joint letter brief are amenable to resolution without oral argument. *See* Civil L.R. 7-1(b). For the reasons discussed herein, the Court **ORDERS** Defendant to produce the five flash drives at issue and to produce certain documentation to confirm his employment by Zhejiang University.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id.* Relevancy, for purposes of discovery, is broadly defined to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51 (1978)); *see also In re Facebook, Inc. Consumer Privacy User Profile Litig.*, No. 18-MD-2843 VC (JSC), 2021 WL 10282215, at *4 (N.D. Cal. Sept. 29, 2021) ("Courts generally recognize that relevancy for purposes of discovery is broader than relevancy for purposes of trial.") (alteration omitted).

While the scope of relevance is broad, discovery is not unlimited. *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Information, even if relevant, must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). The 2015 amendments to Rule 26(b)(1) emphasize the need to impose reasonable limits on discovery through increased reliance on the common-sense concept of proportionality: "The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that may be directed to matters that are otherwise proper subjects of inquiry. The [proportionality requirement] is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse." Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment. In evaluating the proportionality of a discovery request, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information,

2

the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The party seeking discovery bears the burden of establishing that its request satisfies the relevancy requirements under Rule 26(b)(1). *La. Pac. Corp. v. Money Mkt. 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party, in turn, has the burden to show that the discovery should not be allowed. Id. The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments. *Id.*; *see also Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). As part of its inherent discretion and authority, the Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). The Court's discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

**DISCUSSION**

The Parties' joint discovery letter brief raises two distinct disputes: (A) whether Defendant should be required to turn over five identified USB flash drives to Plaintiff's electronic forensic expert for analysis; and (B) whether Defendant should be required to produce documents evidencing his current employment with Zhejiang University.

### A. The Five USB Flash Drives

During discovery in this case, Defendant produced for inspection his personal laptop computer and the hard drive from his desktop computer. [Dkt. 41 at 2]. Plaintiff employed a forensic expert to examine these devices, and that expert confirmed that no confidential information belonging to Plaintiff was on either device because Defendant had re-formatted both devices and thus deleted any files on those devices. *Id.* Plaintiff argues that Defendant deleted the files from both devices to hide evidence of wrongdoing; Defendant argues that he deleted the files on both devices because Plaintiff sent him a demand letter which Defendant contends demanded he cease possessing any of Plaintiff's confidential information. *Id.*

Plaintiff's forensic expert was able to identify the undisputed fact that Defendant attached five USB flash memory devices to his computers around the time period of Defendant's recent resignation from Etopus. *Id.* Plaintiff identifies the five USB flash drives as follows:

| Serial Number | Friendly Name | Last Connected Date/Time UTC-08:00 (M/d/yyyy)[DST] |
|---|---|---|
| 6&1be5eee0&0&000000 | Micron CT2000X10PROSSD9 SCSI Disk Device | 12/23/2023 12:00 |
| 0111227312 | Generic Flash-Disk USB Device | 12/26/2023 15:44 |
| 6&3531a072 | SCSI DISK USB Device | 1/2/2024 14:51 |
| 0376219020003005 | Samsung Type-C USB Device | 1/3/2024 17:45 |
| 4928UYNZMFP73SUO | JetFlash Transcend 4GB USB Device | 2/13/2024 21:42 |

Dkt. 41 at n.5.

Plaintiff argues that examination of these USB flash drives will show whether Defendant copied or loaded files containing Defendant's confidential information onto these memory devices from either the laptop or home desktop. *Id.* at 3. Plaintiff concedes that if the forensic examination of these devices does not show any such files were on these USB drives, this case may well be dismissed voluntarily. [Dkt. 46 at 3].

Defendant argues that three of the USB devices are used by Defendant and his family for personal uses, and thus these devices contain personal data unrelated to any issues in this case. Defendant argues that the requests for production of these three USB devices violates his and his family's rights to privacy. [Dkt. 41 at 4].

4

Defendant further argues that the "last connection date" for these devices all post-date the date that Defendant reformatted his laptop and home desktop, and therefore it would have been impossible to transfer any files containing Plaintiff's confidential information onto the USB drives since none could have existed on the reformatted devices after the date they were reformatted. *Id.*

Plaintiff counters that the "last connection date" for these devices does nothing to show whether and when these devices were connected to the laptop and home computer prior to those "last connection" dates. *Id.* at 3. Plaintiff argues that nothing stopped Defendant from connecting these USB devices to the laptop and home computer prior to the date those were reformatted, and thus nothing stopped Defendant from transferring files containing Plaintiff's confidential information onto those USB devices prior to Defendant's resignation date. *Id.*

Plaintiff further argues that there is a Protective Order in this action which protects the personal, private information of Defendant and his family, sufficient to overcome concerns about their rights to privacy. *Id.* Further, Plaintiff proposes that only Plaintiff's outside forensic expert would have access to the USB devices, to further safeguard any privacy concerns. [Dkt. 46 at 3].

The Court **FINDS** that discovery of files from these five identified USB devices is within the scope of relevance for purposes of discovery. However, Plaintiff has failed to demonstrate why surrender of these devices for forensic inspection is required, particularly in the face of representations under Rule 11 by Defendant's counsel that the devices contain private, personal information of Defendant and his family. Turning over the five USB devices for inspection is not proportional to the needs of this case, based on the current record. That does not mean that discovery of the files on those USB devices is barred. Neither Party has explained why they should deviate from the normal procedures for electronic discovery. Neither Party has discussed or explained why counsel here apparently failed to follow (or cite) the Court's Guidelines for the Discovery of Electronically Stored Information ("eDiscovery Guidelines"). *See* https://www.cand.uscourts.gov/filelibrary/1117/ESI_Guidelines-12-1-2015.pdf.

In the modern era of electronic discovery, it is not normal for a party requesting discovery to demand surrender of storage devices for forensic inspection *as the first step*. Nor is it normal for a party resisting discovery of electronically stored files to *flatly* refuse to search those storage

5

devices for potentially relevant, responsive electronic files. Defendant's argument that the USB devices contain lots of personal data is mooted by a normal search of the electronic files. Plaintiff's admitted mere suspicion that the USB devices might contain Plaintiff's confidential information does not (on the current record) support wholesale inspection of the devices, but rather is addressed proportionally through a normal search of the electronic files. The Court is at a loss to understand how and why experienced counsel (particularly lead trial counsel, who should have known better and, going forward, are expected to meaningfully participate in the meet and confers of lead counsel required by this Court's Standing Discovery Order) here were unable to treat and resolve this dispute as a normal eDiscovery process.

Because counsel here either ignored or inexplicably refused to follow normal eDiscovery procedures here, the Court **ORDERS** as follows:

If not already in the possession of Defendant's counsel, Defendant's counsel shall take immediate possession of the five identified USB devices and shall take all appropriate steps to ensure they are not tampered with. Defendant's counsel shall either engage a competent eDiscovery service provider or use the services of qualified eDiscovery staff within their law firm to image and store an accurate copy of all the files on each of the five identified USB devices using industry standard software or platforms (such as Relativity) to create a searchable database of the files from those devices. Defendant's counsel's eDiscovery service provider/staff shall complete this imaging process within thirty days of this Order. Within **five (5) business days** of the date of this Order, counsel for Plaintiff **SHALL** propose to Defendant's counsel a reasonable number of reasonably targeted search terms to be used to search for responsive, relevant documents from the database of files copied from the USB devices. The Parties shall promptly meet and confer thereafter to negotiate the search terms, and the Court **ORDERS** counsel to cooperate reasonably in both proposing and counterproposing search terms. Further, the Court **ORDERS** counsel to include their respective eDiscovery providers and forensic experts in any such meet and confers to assist in resolving disputes over technical issues. As soon as the database of files from the USB devices is searchable, Defendant's counsel is **ORDERED** to run test searches using proposed and counterproposed search terms and to transparently share hit results and statistics (including statistics

after de-duplication) with Plaintiff's counsel as part of the meet and confer process. The Court **ORDERS** the Parties to complete negotiations over search terms within **forty-five (45) days** of the date of this Order. Once search terms are finalized, the Court **ORDERS** Defendant to produce from the database of files from the USB drives all non-privileged documents, files, or electrically stored information which result from searching using the finally agreed-upon search terms. Defendant shall follow the procedures in the Protective Order for designation of any such produced documents as confidential under the Protective Order. Defendant **SHALL** complete such production within **sixty (60) days** from the date of this Order.

Counsel are further **ORDERED** to read, comply with, and follow the Court's eDiscovery Guidelines as appropriate here. Counsel may not unilaterally alter the deadlines or procedures set forth in this Order. If counsel wish to be relieved of any deadlines or procedures set forth, they shall submit any such modifications to the Court by Stipulation and Proposed Order. Unless ordered otherwise, the deadlines and procedures herein shall remain in place.

The Court takes note of Defendant's argument that the costs of this litigation are burdensome because he is an individual. And the Court is cognizant that eDiscovery services include additional costs. Accordingly, the Court **GRANTS** Defendant leave to surrender the five identified USB devices to Plaintiff's forensic expert instead of proceeding under the normal eDiscovery processes discussed above. The Court **ORDERS** Defendant to file a Notice with the Court, within **three (3) business days** from the date of this Order, indicating whether Defendant opts to surrender the five USB devices to Plaintiff's forensic expert instead of following the eDiscovery procedures set forth above. If Defendant fails to file such Notice by the deadline, then the Parties **SHALL** follow the eDiscovery procedures set forth above. If Defendant opts to surrender the five USB devices within the deadline, Plaintiff's counsel shall immediately thereafter provide the contact information for Plaintiff's forensic expert and Defendant's counsel shall thereafter deliver (or have delivered) the five USB devices to that forensic expert with all deliberate speed. Defendant's counsel shall provide notice of delivery of the USB devices to Plaintiff's counsel on the same day delivery occurs. Plaintiff's forensic expert shall provide notice of receipt of the five USB devices immediately upon receipt to Plaintiff's counsel, who shall send that confirmation of receipt to Defendant's counsel on

the same day of receipt of the notice from the expert. The Plaintiff's forensic expert shall treat those five devices (and all files and information stored therein) at the highest level of confidentiality under the Protective Order and shall not copy, share, disclose, or make available in any way personal files, information, or data of Defendant or his family with Plaintiff, Plaintiff's counsel, or any other person or entity. For purposes of this Order, "personal files, information, or data" includes but is not limited to Social Security numbers, bank account numbers, personally identifying information, information or files identifying, relating to, or discussing any minor children, and other files or information which on their face are of a personal, intimate, or family nature. If Defendant opts to surrender the five USB devices, Plaintiff's forensic expert shall only retain copies of responsive, relevant, non-privileged files or data or information from those devices, and shall complete their investigation and forensic examination of those devices within sixty days of receipt of the USB devices. Plaintiff shall produce to Defendant a copy set of the responsive, relevant, non-privileged files or data or information from those devices which Plaintiff's expert has retained. Defendant's counsel shall promptly designate those produced documents as appropriate under the Protective Order. Immediately at the conclusion of the sixty (60) days, Plaintiff's forensic expert shall deliver (or cause to be delivered) all five of the USB devices back to counsel for Defendant.

Counsel for Plaintiff shall immediately serve a copy of this Order on their forensic digital expert, and shall immediately secure an undertaking under oath from that expert agreeing to comply with this Order.

### B. Documents Relating to Defendant's Employment at Zhejiang University

Apparently, upon resigning from Etopus, Defendant indicated that he was joining Zhenjiang University (located in China) as a researcher or professor. [Dkt. 41 at 4]. Based on Defendant's alleged contacts with other former employees of Etopus and certain identified companies in China, Plaintiff seeks documents regarding Defendant's current employment and his ownership in any companies in China. *Id.*

Defendant asserts general arguments that the requests are "overbroad, harassing, and seek irrelevant information." *Id.* at 5. As the Party resisting discovery, Defendant may not rely on conclusory arguments. *See Blankenship*, 519 F.2d at 429; *see also La. Pac. Corp.*, 285 F.R.D. at

485. Aside from the conclusory argument that the requests are "overbroad" and "harassing," Defendant makes no showing or detailed argument to support those assertions. Defendant argues that the requests are irrelevant because he has "already informed Plaintiff that he has not disclosed Plaintiff's confidential information to his currently [sic] employer." [Dkt. 41 at 5]. Plaintiff responds that Defendant has represented that he has found no documents responsive to the request for documents regarding an offer of employment by any university in China, which is unusual since he has represented he joined Zhejiang University. *Id.* at 4. Plaintiff argues that confirming whether or not Defendant is actually employed by Zhejiang University and whether or not he has current ties to the companies identified in China is highly relevant to whether or not misappropriation of confidential information has occurred here or not. *Id.*

The Court **FINDS** that the request for documents regarding Defendant's current employment is relevant within the scope of discovery – if he is currently employed by Zhejiang University, then that is potentially relevant to his defense that no misappropriation has occurred; conversely, if he is employed by a competitor of Etopus, that is potentially relevant to Plaintiff's claims. However, to the extent the requests seek any and all documents regarding current employment, they are not proportional. Again, this is an issue which the Court is disappointed that counsel could not resolve through reasonable and direct negotiations. The Court **ORDERS** Defendant to produce documents sufficient to evidence his current employment, his current employer (or employers if he has multiple jobs), and any sources of income Defendant receives from any entity or person worldwide. This order includes any employment contracts, recent paycheck stubs/receipts, or university webpages, directories, or staff manuals from Zhejiang University. This order further includes each employment contract, contract for services, consulting agreements, or other agreements between Defendant and any person or entity under which Defendant has ever received or is currently receiving compensation, income, or revenue since January 1, 2023, (other than Etopus). Defendant shall complete this ordered production within **thirty (30) days** from the dates of this Order.

The Court **FINDS** that the request for documents relating to Defendant's ownership in or relationships with certain identified companies or persons in China is also relevant within the scope of discovery because Defendant allegedly had contact with at least one former Etopus employee

9

who started companies in China in 2023. [Dkt. 1 at ¶ 5]. If Defendant has no ownership interest in the identified companies in China, that would potentially be relevant to his defense that no misappropriation has occurred; conversely, if Defendant has ownership in interest in the identified companies, that would potentially be relevant to Plaintiff's claims. However, to the extent the requests seek all documents relating to Defendant's ownership or relationships with any company worldwide, the requests are not proportional. Again, the Court is disappointed that experienced counsel were unable to resolve this dispute through reasonable cooperation in the meet and confer process.

Accordingly, the Court **ORDERS** Defendant to produce documents sufficient to evidence any ownership interest Defendant owns or controls in Xin Zhi Yuan (Shanghai) Technology Ltd.; San Ya Fu Guang Lin; San Ya Xin Zhi Yuan No. 1; or any company, partnership, or corporation worldwide for which any of either Xi Liu, Hong Yin, or Zheng Wang have any ownership interest, are an officer, director, or partner, or control. *See* Dkt. 1 at ¶ 5. The Court further **ORDERS** Defendant to produce any contracts or agreements between (on the one hand) Defendant and (on the other hand) any of Xin Zhi Yuan (Shanghai) Technology Ltd.; San Ya Fu Guang Lin; San Ya Xin Zhi Yuan No. 1; or any company, partnership, or corporation worldwide for which any of either Xi Liu, Hong Yin, or Zheng Wang have any ownership interest, are an officer, director, or partner, or control. If Defendant confirms after a reasonable search that no documents exist as ordered herein, Defendant's counsel shall provide promptly a supplemental response to Plaintiff's document requests attesting to the lack of existence of any such documents, attesting to the fact that Defendant's counsel performed the search for documents directly (and did not rely solely on their client), and attesting to whether Defendant's counsel themselves performed a reasonable, good faith search, where such response shall be certified by counsel under Fed. R. Civ. P. 11 (and shall be a representation to the Court on behalf of all counsel for Defendant, not merely the counsel signing the supplemental response).

## CONCLUSION

For the reasons discussed herein, the Court **ORDERS** the production of files from the five USB devices using a normal eDiscovery procedure (with Defendant granted the option of providing

the USB devices for inspection instead) and **ORDERS** Defendant to produce employment documents and corporate ownership/relationship documents as detailed above. In light of the Court's resolution of these disputes, the Court **DENIES** Defendant's "Objection" to footnote 6 in the joint letter brief as moot. This Order **RESOLVES** Dkts. 41, 42, and 46.

The Parties and their counsel are again admonished to review and comply with the Court's Guidelines for Professional Conduct at Section 9 on Discovery, this Court's Discovery Standing Order (particularly Section H on discovery dispute resolution), and the Federal Rules of Civil Procedure, particularly Rules 1 and 26. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("It is expected that discovery will be effectively managed by the parties in many cases.").

The Court is concerned by the apparent lack of effective communication between counsel during the mandatory meet and confers. If the Parties demonstrate an inability to resolve discovery disputes in a reasonable manner consistent with Rules 1 and 26 (as well as this Court's directives and Orders), the Court will consider imposing additional meet and confer procedures for future discovery disputes, including but not limited to requiring any counsel directly involved in any of the meet and confers to meet and confer **in person**; requiring **in-person** meet and confers by lead trial counsel regardless of lead counsels' geographic proximity; requiring meet and confers to take place in person at the San Francisco courthouse or other location; requiring in-house counsel or Party representatives (or Parties themselves, if any are natural persons) to attend all meet and confers; the imposition of appropriate sanctions (including monetary sanctions) for failure to adequately and reasonably meet and confer; and/or any other sanction or other procedure the Court deems appropriate in the circumstances.

**IT IS SO ORDERED.**

Dated: July 5, 2024

_____
PETER H. KANG
United States Magistrate Judge